```
                                              FILED
         UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ALABAMA       00 AUG 18 PM 1:42
             NORTHEASTERN DIVISION
                                           U.S. DISTRICT COURT
JERRY SCOTT,                  )              N.D. OF ALABAMA
                              )
     Plaintiff,               )
                              )
vs.                           )   Civil Action No. CV-99-S-2778-NE
                              )
WARDEN RALPH HOOKS, CAPTAIN   )
RAY HUEY, LIEUTENANT PATRICK  )
ROBINSON, DEPUTY WARDEN WISE, )
SERGEANT DUNAWAY, AND OFFICER )
BELSHER,                      )            ENTERED
                              )
     Defendants.              )           AUG 18 2000
```

## MEMORANDUM OF OPINION

Plaintiff is incarcerated in the State of Alabama's Limestone Correctional Facility. He is assigned to the "Special Unit," the facility for inmates who are HIV positive. Prior to April 6, 1999, such inmates were assigned to dormitories 7 and 8, where they "had a softball field, volley ball court, horse shoes & shuffle board" that could be utilized "without fear of being harmed ... by Razor Wire."[1] On that date, however, the special unit and chain gang inmates were transferred to dorm 16. The move was explained by defendant Ralph Hooks, the warden of Limestone, in the following memorandum:

> SPECIAL UNIT
>
> As many of you know, there will be a move between Special Unit inmates and Chain Gang inmates. This is no way means you will be on a Chain Gang. This move is for your

---

[1] Attachment to plaintiff's first amended pro se complaint filed January 28, 2000 (doc. no. 7).



benefit with the following advantages:

- Constant locking down should cease. This will be your own area.

- There are 19 telephones for your use.

- Dining facility with tables.

- Pill call and sick call screening will be conducted at the dormitory so that you will not have to walk in the rain.

- <u>There is an area in the back of the dormitory for a softball field/football field</u>.

- New weights will be purchased for the weight pile.

- There is a long front porch at the dormitory for smoking and protection from the rain.

- Basketball goals are already installed.

- Shuffleboard areas will be constructed.

- There is an excellent area for a garden.

- A lot of open dormitory space for hobby crafts, games, dayrooms, etc.

Overall, I believe the vast majority of Special Unit inmates will be happy once the move has been made and they can actually see the advantages.

I sincerely appreciate your cooperation with this move. Your supervisors will be Captain Huey, Lt. Robinson and Sgt. Mason.[2]

Following the transfer, plaintiff assisted several other inmates "cut or make" a softball field behind dorm 16.[3] The

---

[2] Exhibit "A" to plaintiff's motion for leave to file an amended complaint, filed on December 2, 1999 (doc. no. 5) (emphasis supplied).

[3] Attachment to plaintiff's first amended complaint filed January 28, 2000 (doc. no. 7).

Department of Corrections placed a razor wire fence around the perimeter of the field. When the inmates complained about the potential hazards of such a fence, the Department of Corrections erected a "hog wire" inner-fence. On August 8, 1999, while playing softball, and while running into deep right field in pursuit of a fly ball, plaintiff ran into the inner-barrier. The fence gave way, he flipped into the razor wire beyond, and sustained numerous cuts. He filed this pro se action on October 15, 1999, seeking damages under 42 U.S.C. § 1983. He alleged that defendants "have been <u>negligent</u> by not removing this razor wire from this playing area."[4]

The United States Magistrate Judge to whom this case was assigned for screening[5] filed a report recommending that the action be dismissed for failure to state a claim upon which relief may be granted,[6] saying in pertinent part:

> Plaintiff complaints that the defendants created a hazardous condition, then allowed inmates to play on the field knowing that the field was dangerous. Plaintiff does not claim that defendants required him to play softball on the field surrounded by razor wire, but that they were negligent in failing to provide him with a safe place to play softball. The law is clear that negligent conduct alone, absent any intentional government conduct does not give rise to a valid due process claim. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474

---

[4] *Id.* (emphasis supplied).
[5] *See* 28 U.S.C. § 1915A(a).
[6] *See id.* § 1915A(b)(1).

U.S. 344 (1986). ...[7]

Plaintiff filed objections to the magistrate's report and recommendation.[8] He later filed a "Motion for Supplemental Complaint With Affidavits."[9] The objections and the "Motion" repeat plaintiff's statements that the "hog wire" fence proved inadequate to prevent him from falling into, and injuring himself on the razor wire. In addition, however, plaintiff now asserts that defendants were knowingly, recklessly, willfully, and deliberately indifferent to his safety.[10]

Section 1983 provides a means of seeking redress against governmental entities and officials whose conduct under color of state law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. The statute was enacted for the express purpose of enforcing the Fourteenth Amendment. In pertinent part, it provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act

---

[7] Magistrate Judge's Report and Recommendation entered February 2, 2000 (doc. no. 9), at 2.

[8] *See* document no. 10, filed February 15, 2000.

[9] *See* document no. 11, filed March 3, 2000.

[10] *See id.*, *e.g.*, ¶¶ 5, 7-9.

4

> or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. ...

42 U.S.C. § 1983.

When a state inmate claims that conditions of confinement imposed by prison officials have caused harm, he must show that the defendants were "deliberately indifferent" to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835, 114 S.Ct. at 1978.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. ... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment.

*Id.* at 837-38, 114 S.Ct. at 1979 (citations omitted).

Even when prison officials "actually knew of a substantial risk to inmate health or safety," they still "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" <u>not</u> to guarantee freedom from any harm. *Id.* at 844, 114 S.Ct. at 1983 (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993)).

In short, the Supreme Court holds that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement <u>only if</u> he knows that inmates face a substantial risk of serious harm and <u>disregards</u> that risk by <u>failing</u> to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847, 114 S.Ct. at 1984 (emphasis added).

The allegations and affidavits submitted in this case do not rise to that level. After plaintiff and other inmates complained of the risk posed by the razor wire placed around the perimeter of the softball field, defendants neither disregarded their protests nor failed to take steps to avert injury. An inner perimeter fence was erected. The failure of that barrier to serve its intended purpose falls short of establishing that defendants were

6

"deliberately indifferent" to plaintiff's safety.

Accordingly, following consideration of the entire file, including the plaintiff's objections and "Motion for Supplemental Complaint With Affidavits," this court concludes that the magistrate judge's report and recommendation is due to be ADOPTED and APPROVED, and this action dismissed. An appropriate order will be entered contemporaneously herewith.

DONE this 18th day of August, 2000.

_____
United States District Judge